NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| HOWMEDICA OSTEONICS CORP., | : | |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | Civ. No. 05-897 (WHW) |
| | : | |
| ZIMMER, INC., | : | |
| CENTERPULSE ORTHOPEDICS, INC., | : | |
| (formerly known as SULZER | : | |
| ORTHOPEDICS, INC.) | : | |
| and | : | |
| SMITH & NEPHEW, INC., | : | |
| | : | |
| Defendants. | : | |

**Walls, Senior District Judge**

Presently before the Court is a motion by plaintiff Howmedica Osteonics Corp. ("Howmedica") seeking reconsideration of the Court's June 13, 2007 Order granting defendants Zimmer, Inc.'s, Zimmer Austin, Inc.'s, and Smith & Nephew, Inc.'s joint motion for summary judgment. Having considered the parties' written submissions, the Court denies Howmedica's motion for reconsideration.

## I.  FACTS AND PROCEDURAL HISTORY[1]

In February 2005, Howmedica brought this action against Zimmer, Inc., Zimmer Austin,

---

[1] The factual background is recounted in the Court's June 13, 2007 Opinion whereby the Court granted defendants' motion for summary judgment. This opinion will include only facts pertinent to the disposition of the motion presently before the Court.

**NOT FOR PUBLICATION**

Inc., and Smith & Nephew, Inc. (collectively the "defendants"), alleging that they had violated 35 U.S.C. § 271 by infringing four of Howmedica's patents relating to polymeric materials used in medical implants. These four patents are U.S. Patent No. 6,174,934 B1 (filed Jan. 23, 1998) ("the '934 patent"); U.S. Patent No. 6,372,814 B1 (filed June 28, 2000) ("the '814 patent"); U.S. Patent No. 6,664,308 B2 (filed Jan. 8, 2002) ("the '308 patent"); U.S. Patent No. 6,818,020 B2 (filed June 13, 2003) ("the '020 patent") (collectively, "the patents-in-suit"). Howmedica claims that four of the defendants' products, Longevity, Prolong, Durusul, and XLPE, infringe on these patents. The '020 patent is a continuation of application No. 10/041,118, now the '308 patent, which is a continuation of application No. 09/604,868, now the '814 patent, which is a continuation of application No. 09/012,345, now the '934 patent. All four patents share the same specification.

On July 21, 2006, defendants filed a joint motion for summary judgment on the issues of noninfringement and invalidity of the asserted claims in the '934, '814, and '308 patents. Defendants argued that they are entitled to summary judgment on invalidity because the patent claims have a common claim term, the Arrhennius equation, that is not amenable to construction by a person of ordinary skill in the art. Alternatively, defendants claimed that they are entitled to summary judgment on noninfringement because Howmedica was unable to demonstrate how defendants' products infringe on these three patents.

On April 23, 2007, the Court issued its <u>Markman</u> Order construing the claim terms and phrases needing construction as identified by the parties. The parties argued the motion for summary judgment on May 15, 2007. The Court found that the Arrhennius equation term in the

**NOT FOR PUBLICATION**

'934, '814, and '308 patents is insolubly ambiguous.  On June 13, 2007, the Court issued its Opinion and Order granting defendants' motion for summary judgment on the issue of invalidity.  The Court did not consider defendants' motion for summary judgment on noninfringement because this issue became moot.

Howmedica moves for reconsideration of the Court's June 13, 2007 Order pursuant to Local Civil Rule 7.1(i) on the grounds that this Court overlooked dispositive factual and legal issues which would have favored a ruling for Howmedica.

## II.  LEGAL STANDARD

A motion for reconsideration is governed by L. Civ. R. 7.1(i).  The decision of whether to grant a motion for reconsideration is within the discretion of the district court.  See Le v. Univ. of Pa., 321 F.3d 403, 405-06 (3d Cir. 2003).  A motion for reconsideration should be granted only when the movant shows either "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).  Because reconsideration of a judgment after its entry is an extraordinary remedy, requests pursuant to these rules should be granted "sparingly," and only when "dispositive factual matters or controlling decisions of law" are brought to the court's attention but not considered.  Yurecko v. Port Auth. Trans-Hudson Corp., 279 F. Supp. 2d 606, 609 (D.N.J. 2003).

L. Civ. R. 7.1(i) requires the party moving for reconsideration to file a "brief setting forth

**NOT FOR PUBLICATION**

concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked." L. Civ. R. 7.1(I).  The movant must focus its arguments on what the court may have overlooked because the purpose of this limitation is to "encourage parties to present their positions as completely as possible, and to prevent parties from filing a second motion, with the hindsight provided by the court's analysis, covering issues that should have been raised in the first set of motions." United States v. Jones, 158 F.R.D. 309, 314 (D.N.J. 1994).  The movant may not use a motion for reconsideration to "relitigate old matters, nor to raise arguments or present evidence that could have been raised prior to the entry of judgment."  P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp., 161 F. Supp. 2d 349, 352 (D.N.J. 2001)(citing Charles A. Wright et al., Federal Practice and Procedure § 2810.1 (2d ed. 2006)).

### III.  DISCUSSION

Howmedica does not argue that either an intervening change in the controlling law or new evidence not available when the Court decided the motion for summary judgment requires the Court to reconsider its June 13, 2007 Order.  Max's Seafood Café, 176 F.3d at 677.  Rather Howmedica presents four arguments that the Court overlooked dispositive factual and legal issues which resulted in a clear error of law or fact.  Howmedica argues that the Court (1) misplaced the burden of proof on Howmedica to establish claim definiteness; (2) overlooked facts in the record or readily ascertainable from the patent specification that would establish claim definiteness; (3) overlooked the law on claim differentiation; and (4) blurred the legal standards between claim construction, claim definiteness and infringement.

**NOT FOR PUBLICATION**

A.     **Burden of Proof on Claim Definiteness**

Howmedica argues that the Court misplaced the burden of proving claim definiteness on Howmedica.  As the Court noted in its  June 13, 2007 Order, any patent approved by the United States Patent & Trademark Office ("PTO") has a "statutory presumption of validity."  Exxon Research & Eng'g Co. v. United States, 265 F.3d 1371, 1375 (Fed. Cir. 2001).  The burden of proving a patent's invalidity rests with the party that challenges its validity.  35 U.S.C. § 282.  To meet that burden, the party challenging validity bears the burden of proving, by clear and convincing evidence, that the invention fails to meet the requirements of patentability.  Hewlett-Packard Co. v. Bausch & Lomb, 909 F.2d 1464, 1467 (Fed. Cir. 1990). (Dkt. 176, June 13, 2007 Opinion, at 10.)

Howmedica's assertion that the "burden of proof never shifts to the patentee to prove validity" is correct but incomplete.  (Dkt. 181-5, Howmedica's Br., at 2)(citing Pfizer, Inc. v. Apotex, Inc., 480 F.3d 1348, 1359 (Fed. Cir. 200).  In Pfizer, the Federal Circuit explained the different burdens between the patentee and the party changing the patent's validity. Id. at 1359-60.  "[O]nce a challenger has presented a prima facie case of invalidity, the patentee has the burden of going forward with rebuttal evidence."  Id. at 1360.  Howmedica need not submit evidence to support the conclusion that its patent remains valid, but "once a challenger introduces evidence that might lead to a conclusion of invalidity-what we call a prima facie case-the patentee 'would be well advised to introduce evidence sufficient to rebut that of the challenger.'" Id. (quoting Orthokinetics, Inc. v. Safety Travel Chairs, Inc., 806 F.2d 1565, 1570 (Fed. Cir. 1986)).  The district court's responsibility is to determine whether the challenging

**NOT FOR PUBLICATION**

party "has met its burden by clear and convincing evidence by considering the totality of the evidence, including any rebuttal evidence presented by the patentee." Id.

The Court noted in its June 13, 2007 Opinion that whether a particular patent is "invalid for indefiniteness presents a question of law," Exxon Research and Engineering Co. v. United States, 265 F.3d 1371, 1376 (Fed. Cir. 2001), because "claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." Personalized Media Comm'ns, L.L.C. v. Int'l Trade Comm'n, 161 F.3d 696, 705 (Fed. Cir. 1998). Indefiniteness remains a matter of law, and the proper province of the court, even when the determination of claim's indefiniteness depends on an underlying issue of fact. Exxon, 365 F.3d at 1376. In such circumstances the court will consider those underlying factual issues and rule on indefiniteness as a "matter of law on summary judgment." Id. (Dkt. 176, June 13, 2007 Opinion, at 8.) In order for the court to construe the claim term, it must consider both the challenging party's prima facie case of invalidity and the patentee's rebuttal evidence.

The Court recognized the presumption of the '934, '814, and '308 patents' validity but found that "[d]efendants have proven by clear and convincing evidence that the Arrhennius' equation terms" in these three patents "are insolubly ambiguous." (Dkt. 176, June 13, 2007 Opinion, at 18.) The Court disagrees with Howmedica's protest that defendants used only attorney arguments to support their prima facie case of claim indefiniteness. Defendants provided testimony from Howmedica's expert witnesses, defects in Howmedica's evidence and, most importantly, citations to the patent specification and claim language. (Dkt. 176, June 13, 2007 Opinion, at 17-18.) As the Federal Circuit has repeated often, the meaning of a claim is

**NOT FOR PUBLICATION**

determined by using intrinsic evidence, which includes the claims, the specification, and the prosecution history and, if necessary, by using extrinsic evidence, which includes expert and inventor testimony, dictionaries and learned treatise. Phillips v. AWH Corp., 415 F.3d 1303, 1314-19 (Fed. Cir. 2005)(en banc). Howmedica's use of expert testimony "is less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'" Id. at 1317 (quoting C.R. Bard, Inc. v. U.S. Surgical Corp., 388 F.3d 858, 862 (Fed. Cir. 2004)). The Court considered the claim language and the patent specification as the primary sources for construing the Arrhennius equation term.

Howmedica protests that defendants raised for the first time in their reply that the indefiniteness of the "Arrhennius equation" stemmed from the inability to determine a second post-irradiation heating time/temperature combination disclosed in the patents-in-suit. The Court gave Howmedica an opportunity to respond to defendants' new argument in its surreply. (Dkt. 112, Howmedica's surreply, at 1.) The Court also gave Howmedica ample opportunity to address defendants' new argument during the May 15, 2007 Summary Judgment Hearing. (May 15, 2007 Tr., at 33.) The Court, after considering the totality of the evidence, found that "the specification discloses at least three time/temperature pairs that could be equivalent to 144 hours and $50^N C$." (Dkt. 176, June 13, 2007 Opinion, at 18.) For this reason, the Court found the Arrhennius equation term "insolubly ambiguous." The Court did not overlook the law on the burden of proving invalidity nor denied Howmedica the opportunity to respond to defendants' new prima facie case that the Arrhennius equation term was indefinite.

**NOT FOR PUBLICATION**

**B.     Overlooked Facts in the Record or in the Patent Specification**

Howmedica argues that the Court "may have overlooked explanations for the issues first raised in Defendants' Reply brief and relied upon by the Court." (Dkt. 181-5, Howmedica's Br., at 5.) Howmedica reargues two of the Court's findings: (1) that "[n]either counsel nor Howmedica's experts can provide any reason for their belief that a person of ordinary skill in the art would pair 4 hours with 130$^N$[C], rather than 135$^N$C or 140$^N$C" and (2) that Howmedica and its experts do not explain the purported ambiguity between the fact that "144 hours (at 50$^N$C) is a preferable heating time, but 4 hours (at 130$^N$C, 135$^N$C, or 140$^N$C) is a minimum time." ((Dkt. 181-5, Howmedica's Br., at 5 (quoting Dkt. 176, June 13, 2007 Opinion, at 17, 18)). Both findings relate to Howmedica's position that heating at 130$^N$C for 4 hours is equivalent to heating at 50$^N$C for 144 hours.

Howmedica dissects the partial phrase, "[t]he preferred time and temperature is 130$^N$C at 20 hours with the minimum annealing time being about 4 hours," from the patent specification to support its argument that heating at 130$^N$C for 4 hours is equivalent to heating at 50$^N$C for 144 hours. ((Dkt. 181-5, Howmedica's Br., at 5 (quoting '934 patent, col. 5, lns. 60-62).) Howmedica argues that a person of ordinary skill in the art would pair a heating temperature of 130$^N$C with a minimum heating time of 4 hours.  (Dkt. 181-5, Howmedica's Br., at 5.) Ironically, Howmedica overlooked the context of its quote.[2]  The Court found that there is no

---

[2] The patent specification provides in relevant part:

> For UHMWPE, this temperature range is between about 25$^N$C and about 140$^N$C. However, the preferred annealing temperature range is from about 37$^N$C to about 135$^N$C.  The preferred time and temperature is 130$^N$C for 20 hours with the minimum annealing time being about 4 hours (***requiring a temperature at the high***

-8-

**NOT FOR PUBLICATION**

support in the specification that 130$^N$C is "described as at 'the high end of the range'" and thus should be paired with a heating time of 4 hours. (Dkt. 176, June 13, 2007 Opinion, at 16.)

Despite the fact that the Court explained the reasons for its findings, Howmedica rehashes the same arguments. Howmedica's disagreement with the Court's reasoning is not a proper basis for the grant of reconsideration. Oritani Sav. & Loan Ass'n v. Fidelity & Deposit Co. of Maryland, 744 F. Supp. 1311, 1314 (D.N.J. 1990) ("A motion for reconsideration is improper when it is used 'to ask the Court to rethink what is had already thought through-rightly or wrongly.'").

**C.     Law on Claim Differentiation**

Howmedica argues that the Court overlooked the law on claim differentiation by taking an overly-broad analysis of the claims and by assuming that "each of the asserted claims required that the heating performed consistent with the Arrhennius equation to 'achieve the same level of crosslinking.'" (Dkt. 181-5, Howmedica's Br., at 7.) Despite the fact that the Court cannot find where Howmedica has raised this argument in Howmedica's Markman briefs, the Markman hearing, Howmedica's opposition and surreply briefs on the motion for summary judgment, and the summary judgment hearing. Nor does Howmedica point to where and when this argument was presented and then overlooked by the Court. The Court finds this argument to be a red-herring and improper. United States v. Jones, 158 F.R.D. 309, 314 (D.N.J. 1994) (explaining

---

*end of the range*).

('934 patent, col. 5, lns. 57-63)(emphasis added).

**NOT FOR PUBLICATION**

that a motion for reconsideration is limited "to prevent parties from filing a second motion, with the hindsight provided by the court's analysis, covering issues that should have been raised in the first set of motions.").

Rather than dismiss Howmedica's argument because Howmedica failed to raise this argument earlier, the Court will examine the merits of this argument. Howmedica's argument does not address the dispositive issue. Howmedica argues, for example, that claim 23 of the '934 patent "requires that the heating times and temperatures are 'equivalent,' ***not that the level of cross-links must be the same or equivalent.***" (Dkt. 181-5, Howmedica's Br., at 8 (emphasis added).) The Court decided that all the claims are indefinite because the Arrhennius equation term is indefinite and not because each claim required the same level of cross-linking.

Every independent claim at issue contains the Arrhennius equation term. Claim 23 of the '934 patent is representative of these claims:

> A medical implant comprising an ultra-high molecular weight polyethylene material . . . , said material irradiated to create free radicals in the absence of a free radical generation catalyst while out of contact with oxygen . . . and then **heated** while out of contact with oxygen . . . **at a temperature of greater than 25°C for a sufficient time to create a level of cross-links between free radicals wherein the temperature and time are selected to be at least equivalent to heating said irradiated material at 50°C for 144 hours as defined by the Arrhennius' equation (14)**.

'934 Patent, claim 23 (emphasis added).[3] The Arrhennius equation term is indefinite is because a person of ordinary skill in the art cannot derive the various unknown terms in the Arrhennius

---

[3] The following claims are at issue in this motion for summary judgment: claims 23, 27, 29, 50, and 52 of the '934 Patent; claims 7, 12, and 19 of the '814 Patent; and claims 1, 5, 10, 12, 16, 21, 23, and 24 of the '308 Patent. All of these claims either incorporate the Arrhennius' equation term, or are dependent from claims that incorporate that term.

**NOT FOR PUBLICATION**

equation. A person of ordinary skill in the art cannot derive these unknown terms because the specification does not disclose a temperature/time pair that could be equivalent to the 50°C for 144 hours as defined by the Arrhennius equation. (Dkt. 176, June 13, 2007 Opinion, at 17-18.)

Whether the level of cross-linking should vary among the different claims would not change the Court's opinion about the Arrhennius equation term. The Court found that this term, which was a common claim limitation in all claims at issue, was insolubly ambiguous.

**D.     Law on Claim Construction, Claim Definiteness and Infringement**

Howmedica argues that the Court overlooked its role by blurring the separate legal standards between claim construction, claim definiteness and infringement. First, Howmedica argues that the Court ignored canons of claim interpretation by incorrectly finding that alternative interpretations is tantamount to claim indefiniteness. The Court notes that Howmedica mischaracterizes the Court's opinion by this argument. Howmedica, identifying four possibilities, wrote: "The only deficiency the Court perceived was which of the following time/temperature pairs to select: 20 hours at 130°C, 4 hours at 140°C, 4 hours at 135°C, or *4 hours at 130°C*." (Dkt. 181-5, Howmedica's Br., at 10 (emphasis added).) However, the Court rejected the time/temperature pair of 4 hours at 130°C as a possibility and considered at least three other pairs as possible. "Contrary to Howmedica's assertions, the specification discloses at least three time/temperature pairs that <u>could</u> be equivalent to 144 hours at 150°C, the first being the most plausible: (1) 20 hours at 130°C, (2) 4 hours at 140°C, and (3) 4 hours at 135°C." (Dkt. 176, June 13, 2007 Opinion, at 18.)

**NOT FOR PUBLICATION**

The Court rejected the time/temperature pair of 4 hours at 130$^N$C, despite Howmedica's repeated arguments and expert testimony, because the patent specification does not support Howmedica's position. (Dkt. 176, June 13, 2007 Opinion, at 17.) The Court could not find that there were reasonable, alternative claim constructions to save the patent claims. Rather the Court found the Arrhennius equation term insolubly ambiguous because "the specification discloses at least three time/temperature pairs that <u>could</u> be equivalent to 144 hours at 150$^N$C." (Dkt. 176, June 13, 2007 Opinion, at 17-18.)

Howmedica argues that the Court overlooked the distinction between claim definiteness and infringement. (Dkt. 181-5, Howmedica's Br., at 10.) Howmedica argues that the Court applied the wrong standard when the Court held that "[b]ecause a person of ordinary skill in the art would not be able to discern whether a competitor's similar product actually infringes on Howmedica's patents, the Court finds the claims indefinite." (Dkt. 181-5, Howmedica's Br., at 10 (quoting (Dkt. 176, June 13, 2007 Opinion, at 11, 18).) Howmedica advances <u>SmithKline Beecham Corp. v. Apotex Corp.</u>, for the proposition that "the test for indefiniteness does not depend on a potential infringer's ability to ascertain the nature of its own accused product to determine infringement, but instead on whether the claim delineates to a skilled artisan the bounds of the invention." 403 F.3d 1331, 1340-41 (Fed. Cir. 2005).[4]

---

[4] Howmedica's reliance on <u>SmithKline Beecham</u> is inapposite because the patent claims encompassed levels of a particular substance that could not be determined with technology available at the time. <u>Id.</u> at 1340. Although the patent described a very specific compound, crystalline paroxetine hydrochloride hemihydrate, the "district court considered the claim indefinite if construed to cover undetectable trace amounts of PHC hemihydrate." <u>Id.</u> The Federal Circuit disagreed because although a potential infringer had no way to measure the level of substance contained within its own product, the definite chemical structure claimed by the patent was clear. <u>Id.</u> at 1341.

**NOT FOR PUBLICATION**

First, the quoted language of the Court's June 13, 2007 Opinion must be placed in context where the Court explained in the previous sentence that "[i]f a person of ordinary skill in the art assumes that any one of these three alternatives is equivalent to 144 hours at $50^N$C, she will arrive at an entirely different interpretation of the scope of Howmedica's patents from that proposed by Howmedica's expert."  (Dkt. 176, June 13, 2007 Opinion, at 18.)  The key here is that the scope of the patent is unclear to a person of ordinary skill in the art, regardless of whether that person of ordinary skill in the art is an expert or an accused infringer.  The Court's holding reflects a similar proposition by the Federal Circuit.  Geneva Pharm., Inc. v. GlaxoSmithKline PLC, 349 F.3d 1373, 1384 (Fed. Cir. 2003)(explaining that "a claim is indefinite if its legal scope is not clear enough that a person of ordinary skill in the art could determine whether a particular composition infringes or not.").  The Court found that "it is highly probable that a person of ordinary skill in the art would be unable to determine that 4 hours at $130^N$C is equivalent to 144 hours at $50^N$C."  (Dkt. 176, June 13, 2007 Opinion, at 18.)  The Court did not overlook or blur the legal standards between the law on claim construction, claim definiteness or infringement.

### IV.  CONCLUSION

Accordingly, the Court finds that Howmedica has failed to demonstrate that the Court overlooked any matter or controlling decision that would favor a grant of reconsideration. Howmedica's motion for reconsideration is denied.


October 30, 2007                                                         **s/ William H. Walls**
                                                                          United States Senior District Judge