UNITED STATES DISTRICT COURT

District of New Jersey

Chambers of
William H. Walls
District Judge
_____

(973) 645-2564
(973) 645-3436 Fax

Martin Luther King Jr.
Federal Courthouse
50 Walnut Street
Newark, New Jersey 07102

NOT FOR PUBLICATION

LETTER OPINION FILED

ORIGINAL ON FILE WITH CLERK OF COURT

December 17, 2007

Kevin J. McKenna
Geoffrey A. North
Terrence S. Brody
Gibbons, PC
One Gateway Center
Newark, NJ 07102-5310

Jason S. Oliver
Troutman Sanders LLP
405 Lexington
New York, NY 10174

Timothy J. Malloy
Gregory J. Vogler
Patricia J. McGrath
Deborah A. Laughton
McAndrews, Held & Malloy, Ltd.
500 West Madison Street
Chicago, IL 60661

Glenn S. Kerner
Goodwin Procter, LLP
599 Lexington Avenue
New York, NY 10022

William H. Trousdale
Brian M. English
Michael S. Miller
Tompkins, McGuire, Wachenfeld
        & Barry, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102-4070

Gregory N. Stillman
Hunton & Williams LLP
SunTrust Bank Building
500 East Main Street, Suite 1000
P.O. Box 3889
Norfolk, VA 23510

Rodger L. Tate
Hunton & Williams LLP
1900 K Street, N.W.
Washington, D.C. 20006-1109

John M. Desmaris
David K. Callahan
Bryan S. Hales
Imron T. Aly
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601

**Re:	Howmedica Osteonics Corp. v. Zimmer, Inc., et al.,
	Civil Action No. 05-0897 (WHW-CCC)
	Motion to Disqualify Zimmer's Proposed Expert Witness Stephen Spiegelberg**

Dear Litigants:

Plaintiff Howmedica Osteonics Corp. ("Howmedica") moves to disqualify Dr. Stephen Spiegelberg as a proposed expert witness for Defendants Zimmer Inc. and Centerpulse Orthopedics, Inc. (collectively "Zimmer"). The Court grants Howmedica's motion to disqualify.

## FACTS AND PROCEDURAL HISTORY[1]

Howmedica moves to disqualify Dr. Spiegelberg as a proposed expert witness for Zimmer because Dr. Spiegelberg had done work for Howmedica in this litigation and his knowledge of Howmedica's confidences would prejudice Howmedica's case. See Howmedica's Brief in Support of its Motion to Disqualify (Dkt. Entry 155, filed May 17, 2007) ("Howmedica's Disq. Br."). Zimmer filed its opposition on May 29, 2007, arguing that they had retained Dr. Spiegelberg before the commencement of this action and that Dr. Spiegelberg does not have a

---

[1] The factual background is recounted in the Court's June 13, 2007 Opinion whereby the Court granted defendants' motion for summary judgment. This opinion will include only facts pertinent to the disposition of the motion presently before the Court.

2

relationship with Howmedica that would disqualify him.  See Zimmer's Brief in Opposition to Howmedica's Motion to Disqualify (Dkt. Entry 163, filed May 29, 2007) ("Zimmer's Opp. Br.").

Dr. Speigelberg is the President and co-founder of Cambridge Polymer Group ("CPG"). See Declaration of Dr. Stephen Speigelberg at ¶ 1, Exhibit E to Zimmer's Opp. Br. ("Speigelberg Decl.").  CPG is an independent contract research laboratory located in Boston, Massachusetts that specializes in routine analytical testing, custom test design, and consultation regarding polymers.  See www.campoly.com.

Before the commencement of this action, Zimmer had hired Dr. Spiegelberg and CPG to conduct analysis on Howmedica's patents.  As example, in February 2004, Zimmer's outside patent counsel, Baker & Daniels, on behalf of Zimmer, asked Dr. Spiegelberg to analyze a number of Howmedica patents.  See Speigelberg Decl. at ¶ 2.  Those patents included the patents that Howmedica now asserts in this litigation, which commenced in February 2005. During the course of Dr. Speigelberg's work with Zimmer's counsel, he concluded that at least some of the Howmedica patent claims were invalid over the prior art, for example, claim 24 of Howmedica's '308 patent.  Speigelberg Decl.  at ¶¶ 2-3.

By April 2004, Dr. Spiegelberg had submitted a draft invalidity expert report and a final expert report to Baker & Daniels, opining that claim 24 of the '308 patent was invalid.  See Baker & Daniels April 30, 2004 Billing Statements, Exhibit G & J to Zimmer's Opp. Br.  Baker & Daniels incorporated and relied on Dr. Spiegelberg's opinion and analysis as support for its formal opinion of invalidity pertaining to the '308 patent.  See Baker & Daniels August 13, 2004 Opinion of Non-Infringement of U.S. Patent No. 6,664,308, Exhibit K to Zimmer's Opp. Br.

In December 2004, Howmedica hired Exponent, Inc. ("Exponent"), a science and engineering consulting firm that provides solutions to complex problems.  See www.exponent.com; Exs. D & G to Howmedica's Disqualify Br.  On or about December 2004, Dr. Shi-Shen Yau, a principal research engineer for Stryker Orthopedics (the parent company of Howmedica), had contacted Exponent to arrange for testing of blind-coded samples of defendants' accused products[2] in conjunction with the test methods described in the patents-in-suit.[3]  See id.  Exponent prepared samples of the accused products for Dr. Speigelberg and CPG to test their solubility per solvent extraction and their oxidation index.  See January 26, 2005 and February 8, 2005 letters from Exponent to Dr. Spiegelberg (Exs. B and C to Howmedica's Disq. Br.).  In these letters, Exponent asked Dr. Spiegelberg that "[a]ny and all reports should be sent directly to: Dr. Shi-Shen Yau, Stryker Orthopedics" and described the protocol for testing the solubility that Dr. Spiegelberg should follow.  Id.  Throughout this litigation, Dr. Spiegelberg and CPG continued to test samples provided by Exponent and issued test reports to Dr. Yau in August and December 2006.  See CPG Report dated August 9, 2006 (Ex. J to Howmedica's Disq. Br.); CPG Report dated December 14, 2006 (Ex. L to Howmedica's Disq. Br.); CPG Report dated December 18, 2006 (Ex. K to Howmedica's Disq. Br.).

Howmedica filed this action against defendants on February 15, 2005.  On May 26, 2005,

---

[2] The accused products are Longevity, Prolong, Durusul, and XLPE.

[3] These four patents are U.S. Patent No. 6,174,934 (filed Jan. 23, 1998) ("the '934 patent"); U.S. Patent No. 6,372,814 (filed June 28, 2000) ("the '814 patent"); U.S. Patent No. 6,664,308 (filed Jan. 8, 2002) ("the '308 patent"); U.S. Patent No. 6,818,020 (filed June 13, 2003) ("the '020 patent") (collectively, "the patents-in-suit").

Howmedica designated Dr. Spiegelberg as a fact witness in its initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1).  See Howmedica's May 26, 2005 Initial Disclosures at 3.  Howmedica also produced documents describing Dr. Spiegelberg's and CPG's consulting work for Howmedica for this litigation as early as September 2005.  See September 9, 2005 letter from Kristin C. Juliar to defendants.

In April 2006, Zimmer disclosed facts related to its retention of Dr. Spiegelberg in early 2004 (including billing records reflecting Dr. Spiegelberg's work for Zimmer and the Baker & Daniels firm) when Zimmer produced its non-infringement and invalidity opinions of counsel.  See April 21, 2006 letter from Ann Marie T. Rizzo to Patrica J. McGrath.

On December 11, 2006, defendant Smith & Nephew noticed a deposition of Dr. Spiegelberg or CPG.  See Smith & Nephew's Notice of Subpoena Directed to Stephen Spiegelberg (Dec. 11, 2006).  On January 19, 2007, Zimmer noticed a deposition of Dr. Spiegelberg or CPG.  See Zimmer's Notice of Deposition and Subpoena of CPG (Jan. 19, 2007).  Dr. Spiegelberg retained separate counsel and was represented by Thomas Smith of Caffrey & Smith in his deposition on April 12, 2007.  See April 12, 2007 Deposition of Dr. Stephen Spiegelberg at 5 ("Spiegelberg Dep. Tr.").

About April 27, 2007, Zimmer disclosed to Howmedica that Zimmer intended to use Dr. Spiegelberg as its proposed expert witness.  See Howmedica Disq. Br. at 8.  Howmedica objected to Zimmer's designation of Dr. Spiegelberg as its proposed expert witness on the same day.  See id. at 17.  On May 17, 2007, Howmedica filed its motion to disqualify Dr. Spiegelberg as Zimmer's proposed expert because of his work for Howmedica via Exponent.

5

## STANDARD OF REVIEW

Federal district courts have the inherent power to disqualify experts, derived from its duty to "preserve confidence in the fairness and integrity of judicial proceedings." U.S. ex rel. Cherry Hill Convalescent v. Healthcare Rehab Sys., 994 F. Supp. 244, 248 (D.N.J. 1997). "When an expert is initially retained by one party to a suit and then simply switches sides during the litigation, the conflict of interest is so obvious that disqualification is always required." Owen v. General Motors Corp., C.A. No.: 06-4067, 2007 WL 1101194, *4 (W.D. Mo. Apr. 12, 2007) (citing Koch Refining Co. v. Boudreaux MV, 85 F.3d 1178, 1181 (5th Cir. 1996)). But when the conflict is not as obvious, most courts have rejected this bright-line rule. Koch Refining, 85 F.3d at 1181.

When there is no bright-line rule, a court must make two initial factual determinations. Cordy v. Sherwin Williams Co., 156 F.R.D. 575, 579 (D.N.J. 1994). First, it must find whether it was "objectively reasonable for the first party who retained the expert to believe that a confidential relationship existed." Cherry Hill Convalescent, 944 F. Supp. at 249; see also Cordy, 156 F.R.D. at 579. Second, the Court must find that the first party did in fact disclose confidential information to the proposed expert; "confidential information" is information subject to actual confidentiality agreements between the proposed expert and the party seeking exclusion. Cherry Hill Convalescent, 944 F. Supp. at 249. "The party seeking disqualification bears the burden of establishing both the existence of confidentiality and its nonwaiver." Id. Once both factual determinations are made, the court should weigh such policy considerations as the court's interest in preventing conflicts of interest and maintaining judicial integrity against

6

fostering accessibility to experts with specialized knowledge and encouraging experts to pursue their vocations.  Id. at 251.

## DISCUSSION

At the outset of the Court's analysis, the Court notes that from the start of this litigation in February 2005 to April 2007, not once did either party raise the issue that using Dr. Spiegelberg and CPG would create conflicts of interest despite notice given by each side that Dr. Spiegelberg would be providing evidence for both sides in this litigation.

On May 26, 2005, Howmedica disclosed to Zimmer its intention to use Dr. Spiegelberg as a fact witness pursuant Fed. R. Civ. P. 26(a)(1).  In September 2005, Howmedica produced Dr. Spiegelberg's and CPG's reports regarding the solubility testing of defendants' accused products.  In April 2006, Zimmer disclosed that it had retained Dr. Spiegelberg in early 2004 when Dr. Spiegelberg provided expert reports, which Zimmer's outside counsel, Baker & Daniels, relied on for its non-infringement and invalidity opinions.  In November 2006, Zimmer received additional notice of Howmedica's relationship with Dr. Spiegelberg and CPG when Howmedica waived its work product immunity on the 2005 oxidation index testing performed by Dr. Spiegelberg and CPG and produced all of the 2005 testing documents.  See Howmedica's Reply Brief in Support of Motion to Disqualify at 6 (Dkt. Entry 170, filed June 6, 2007) ("Howmedica's Disq. Reply.").  It was not until April 27, 2007 that Zimmer proposed Dr. Spiegelberg as its expert witness.

The Court finds that Dr. Spiegelberg may be disqualified either under the bright-line rule

or the two part test. If the Court finds that Dr. Spiegelberg received confidential information from Howmedica, the reasons for applying the bright-line rule are as strong in this case, if not stronger, than in the typical case when an expert simply switches sides in the same action. <u>Wang Labs., Inc. v. Toshiba Corp.</u>, 762 F. Supp. 1246, 1248 (E.D. Va. 1991) ("[N]o one would seriously contend that a court should permit a consultant to serve as one party's expert where it is undisputed that the consultant was previously retained as an expert by the adverse party in the same litigation and had received confidential information from the adverse party pursuant to the earlier retention. This is a clear case for disqualification."). Had Dr. Spiegelberg been retained by Howmedica, with the fact that Dr. Spiegelberg had provided Zimmer with his opinion on Howmedica's patents, it would be clear that Dr. Spiegelberg would be disqualified from being Howmedica's proposed expert.

 Instead, this case has the added twist of a double switch where Dr. Spiegelberg could be considered as having worked first for Zimmer, then for Howmedica and again for Zimmer on the same matter. The Court is concerned that Dr. Spiegelberg, before the commencement of and throughout this litigation, provided the analysis and testing of samples of defendants' products to determine whether they infringe Howmedica's patents-in-suit for both Howmedica and defendants. Both parties had notice of this.

 The Court finds that Dr. Spiegelberg should be, and is, disqualified under the bright-line rule because Howmedica shared confidential information with Dr. Spiegelberg and CPG. At the March 14, 2007 hearing, Magistrate Judge Hedges found that Howmedica had properly designated as "CONFIDENTIAL" CPG's reports describing its testing of the accused products

and its results for Howmedica.  Judges Hedges found that confidential information had been exchanged between Dr. Spiegelberg, CPG and Howmedica.  Despite Zimmer's argument that Howmedica failed to provide evidence of any confidential information exchanged between Howmedica and Dr. Spiegelberg, Zimmer fails to address Judge Hedges's finding that CPG's reports for Howmedica are to be considered confidential.

Even under the two part test, the Court finds that Dr. Spiegelberg should be, and is, disqualified.  First, the Court finds that Howmedica's belief that a confidential relationship existed is objectively reasonable.  AstraZeneca Pharm., LP v. Teva Pharm. USA, Inc., C.A. No.: 05-5333, 2007 WL 4292384, at *2 (D.N.J.,2007) (explaining that the "objectively reasonable belief" standard is not a high hurdle).

Howmedica argues that its relationship with Dr. Spiegelberg constitutes that of a non-testifying consultant under Rule 26(b)(4)(B).  Fed. R. Civ. P. 26(b)(4)(B) (describing an expert only for trial preparation as "an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial.").  Zimmer countered that Dr. Spiegelberg was not aware that he had a confidential relationship with Howmedica.  Zimmer refers to Dr. Spiegelberg's declaration.  Dr. Spiegelberg stated that in the summer of 2006, after he became aware that Howmedica and Zimmer were engaged in litigation, Dr. Spiegelberg contacted Dr. Yau of Howmedica and informed him that CPG and Dr. Spiegelberg would not perform tests for Howmedica that were related to this action.  See Spiegelberg Decl. at ¶ 16.  However, Dr. Yau said that "[n]either Dr. Spiegelberg nor anyone else at CPG asked me at any time from November 2004 until present

9

whether any of the testing of the acetabular components or tibial insert was related to this litigation." Declaration of Shi-Shen Yau at ¶ 20 (June 6, 2007) ("Yau Decl."). Dr. Yau also said that neither Dr. Spiegelberg nor CPG informed him that they "would not perform testing for Howmedica related to this litigation. Id. at ¶¶ 21-22.

Instead of determining whether the Court should believe Dr. Spiegelberg or Dr. Yau, the Court will look to the conduct of Dr. Spiegelberg. Dr. Spiegelberg and CPG continued to conduct oxidation index testing of polyethylene samples for Howmedica throughout the litigation, including August and December 2006, several months after Dr. Spiegelberg became aware of this action. The Court will imply that by providing Howmedica with test results, Dr. Spiegelberg and CPG had a contractual relationship with Howmedica at least until December 2006, which is almost two years into this litigation. Restatement (Second) of Contracts § 18 ("[m]anifestation of mutual assent to an exchange requires that each party either make a promise or begin or render a performance.").

The relationship between Howmedica and Dr. Spiegelberg and CPG was confidential because Dr. Spiegelberg acknowledges that the nature of his business is to keep its clients' information confidential. Dr. Spiegelberg stated that "[i]t is CPG's policy that no testing for any client, including Howmedica or Zimmer, would be disclosed without consent of the party for whom the testing was performed, or by court order." Spiegelberg Decl. at ¶ 22. Zimmer has not provided any evidence that Howmedica permitted Dr. Spiegelberg to disclose any of Howmedica's test results.

As to the second part of the test, the Court finds that Howmedica provided Dr.

Spiegelberg and CPG confidential information.  As stated, Judge Hedges had already determined that CPG's reports provided to Howmedica was properly designated as confidential.  Howmedica expected the materials and information (samples of polyethylene and testing protocol) it gave to Dr. Spiegelberg to be kept confidential.  Dr. Spiegelberg and CPG's policies were to keep its clients' information confidential, which would include CPG's reports.

Disqualification would not prejudice Zimmer unduly, because as Howmedica has pointed out and Zimmer has not denied, Zimmer has retained two other technical expert witnesses, Dr. Susan James and Dr. Roger Clough, who may substitute Dr. Spiegelberg's expert opinion.

## CONCLUSION

The Court grants Howmedica's motion to disqualify Dr. Spiegelberg as a proposed expert witness for Zimmer.


s/ William H. Walls

**William H. Walls, U.S.D.J.**